IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RICKIE LOWELL PUTMAN, #187301,    )
                                  )
          Petitioner,             )
                                  )
     v.                           )    CIVIL ACTION NO. 3:04-CV-771-MEF
                                  )              [WO]
                                  )
ARNOLD HOLT, *et al.*,            )
                                  )
          Respondents.            )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed by Rickie Lowell Putman ["Putman"], a state inmate, on August 9, 2004.[1]  In this

petition, Putman challenges convictions for first degree robbery and second degree

kidnapping entered against him pursuant to his guilty pleas by the Circuit Court of Randolph

County, Alabama on May 14, 1996.[2]  Putman did not undertake a direct appeal and the

---

[1] Although the Clerk of this court stamped the habeas petition "filed" on August 13, 2004, Putman certified that he executed the petition on August 9, 2004.  A pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant petition] was delivered to prison authorities the day [Putman] signed it . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  The court therefore construes August 9, 2004 as the date of filing.

[2] 2.  Putman argues "that he was incompetent at the time he [pled] guilty[,]" and that the trial court erred in failing to conduct a competency hearing.  *Attachment to Petition for Writ of Habeas Corpus - Statement of the Case and Facts* at 1-2.  The first claim is a substantive claim of competency, whereas the second claim asserts a denial of procedural due process which the court will reference as a claim of procedural competency.  Putman bases the substantive competency claim on his suicide attempt while awaiting trial, motions to continue trial and for independent mental exam filed on May 6, 1996, and a 2002 diagnosis of mental illness rendered by correctional medical personnel.  Putman set forth the same set of facts in support of each of the aforementioned motions.

aforementioned convictions therefore became final by operation of law on June 25, 1996.

In accordance with the orders of this court, the respondents filed an answer in which they argue that Putman's federal habeas petition is barred by the one-year limitation period applicable to 28 U.S.C. § 2254 petitions.  *See* 28 U.S.C. § 2244(d)(1).[3]  The respondents contend that because the challenged convictions became final after the effective date of the statute of limitations Putman must have filed this § 2254 petition within a year of these convictions becoming final, exclusive of the time that any properly filed state post-conviction petition was pending before the state courts.  The evidentiary materials filed in this case demonstrate that Putman filed state post-conviction petitions pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on September 11, 1996 and December 18, 1996 which tolled the limitation period.[4]  The respondents maintain that even allowing a tolling of the limitation period during the pendency of these first two Rule 32 petitions the limitation period expired prior to Putman filing this federal habeas petition.

---

[3].  Title 28 U.S.C. § 2244(d)(1) sets forth the one-year period of limitation.  This section is contained within the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which became effective on April 24, 1996.

[4].  Putman certified mailing the first Rule 32 petition on September 11, 1996 and the second with attached documents on December 18, 1996.  Although the state court stamped these pleadings "filed" on October 24, 2006 and December 23, 1996, respectively, it is clear that Putman submitted these petitions to prison officials for mailing prior to the dates that the state court received the petitions.  As previously noted, a pro se inmate's petition is deemed filed in federal cases the date the petition is delivered to prison officials for mailing.  *Houston v. Lack, supra.*  "Alabama courts have [adopted this rule and] held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing."  *Ex parte Allen*, 825 So.2d 271, 272 (Ala. 2002); *Holland v. State*, 621 So.2d 373, 375 (Ala.Crim.App. 1993) ("[A] pro se incarcerated petitioner 'files' a Rule 32 petition when he hands the petition over to prison authorities for mailing.").  Consequently, the prison mailbox rule applies to pro se Rule 32 petitions filed in the state courts of Alabama.  Thus, September 11, 1996 and December 18, 1996 are the appropriate dates of filing for Putman's first and second Rule 32 petitions.

Although the respondents concede that Putman also filed a third Rule 32 petition in February of 2003, they argue that this state petition failed to toll the one-year federal period of limitation because Putman filed the petition after expiration of the limitation period.[5] Specifically, this last state post-conviction petition was  not "pending" as required by the provisions of 28 U.S.C. § 2244(d)(2) for purposes of tolling the requisite time period.  *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003); *Tinker v. Moore*, 255 F.3d 1331, 1333-1335 (11th Cir. 2001); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000).  The respondents therefore maintain that the instant federal petition for habeas corpus relief is time-barred.

In light of the foregoing, the court entered an order advising Putman that he had failed to file his § 2254 petition within the one-year period of limitation established by 28 U.S.C. § 2244(d)(1) and providing him an opportunity to show cause why his federal habeas petition should not be barred from review by this court as untimely.  *Order of October 19, 2004 - Court Doc. No. 15.*  In response to this order, Putman argues that the substantive challenge to his competency to enter the guilty pleas cannot be time barred.  *Petitioner's September 29, 2004 Response* at 1; *Medina v. Singletary*, 59 F.3d 1095, 1106, 1107 (11th Cir. 1995) (procedural bar "does not . . . preclude review on the merits of a postconviction [substantive] incompetency claim.").  Putman further argues that he "has presented clear and convincing

---

[5]. The trial court stamped this petition "filed" on March 12, 2003.  However, Putman certified it for mailing on February 27, 2003.  In accordance with applicable law and for purposes of this Recommendation, the court construes February 27, 2003 as the date of filing

evidence that created a real and legitimate doubt as to his competency to stand trial, which entitled him to a hearing on his issue." *Petitioner's September 29, 2004 Response* at 1.

Upon review of the pleadings filed by the parties and applicable federal law, the court concludes that no evidentiary hearing is required and that Putman's habeas petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, as the substantive competency claim is without merit and the procedural competency claim is untimely.

## II.  DISCUSSION

### A.  Facts

In April of 1996, Putman attempted suicide while incarcerated in the Randolph County Jail awaiting trial on several criminal charges pending against him, including robbery and kidnapping charges which form the basis for the convictions challenged in the instant petition.  Based on his suicide attempt, the trial court entered an order on April 16, 1996 requiring that an inpatient evaluation of Putman's competency to stand trial be performed at the Taylor Hardin Secure Medical Facility.  *Respondents' Exhibit A* at 24-26.  Upon completion of the psychological evaluation and mental examination, the forensic psychologist deemed Putman mentally competent to stand trial.  *Respondents' Exhibit G to September 20, 2004 Answer* at 8 - *Forensic Evaluation Report* at 7.  In making this determination, the examiner noted that Putman:

> . . . was cooperative superficially with the evaluation, but was consistently
> evasive in his response to questions posed related to his history of criminal

behavior and specifics related to his psychiatric symptoms. He spoke in a slow, somewhat monotone, but coherent and easily comprehended manner. His responses to questions posed were normally productive, logical, and topic relevant. He displayed adequate memory for immediate, recent, and historical events. Mr. Puttman was oriented to person, place, time, and situation.

* * *

Over the course of this hospitalization, Mr. Puttman has consistently endorsed not only auditory, but visual, tactile, and olfactory hallucinatory experience. However, it is highly unlikely for an individual to experience perceptual anomaly in that many senses. In addition, Mr. Puttman's descriptions of the aforementioned are inconsistent with those typically noted by individuals with known psychopathology. Further, it is highly unlikely that someone would experience psychiatric symptoms of this severity for the amount of time alleged by the defendant without seeking the services of a mental health treatment provider. While the defendant has consistently, when interviewed formally, displayed little range in affective presentation and denied pleasurable activities, he has been observed actively engaged in a variety of activities such as billiards, reading, composing letters, talking with fellow clients and staff members, and using the telephone. In addition, there have been no difficulties noted with his ability to maintain activities of daily living, such as grooming, bathing, eating, and sleeping.

When administered the Millon Clinical Multiaxial Inventory-Revised (MCMI-II) Mr. Puttman overly endorsed symptoms associated with psychopathology. Consequently, the administration of this test is considered to be invalid. He was also administered the Beck Depression Inventory (BDI) on April 16, 1996. His responses to items on this instrument appeared to reflect frustration and guilt associated situational stressors. He also used the BDI to endorse somatic complaints, ease of fatigue, and weight loss.

In summary, the available data is consistent with diagnosis of Adjustment Disorder with Mixed Disturbance of Mood and Conduct. Specifically, it appears that Mr. Puttman's most recent suicidal gesture was in response to frustration, anxiety, and some sadness associated with his current incarceration and failed attempts to resolve his current legal difficulties easily. There is no indication from his behavior during admission at this facility or my review of other available information consistent with a diagnosis of formal thought disorder, major affective disturbance requiring the use of antidepressant medication, or severe cognitive impairment. Rather, Mr. Puttman's behavior

over time appears consistent with a diagnosis of Borderline Personality Disorder. Specifically, he engages in a variety of self-destructive, problematic behaviors. Further, Mr. Puttman appears to profit little from experience.

FORENSIC ASSESSMENT
Competency Assessment

On the date of admission, Rickie Lowell Puttman was administered the Competency to Stand Trial Assessment Instrument (CAI) as part of the evaluation of his ability to assume the role of a defendant. The CAI is a semi-structured interview test designed to measure the defendant's knowledge and understanding in 13 areas related to trial competency. Mr. Puttman performed quite well on this portion of the interview with respect to factual information. This appears to be a function of his history with the criminal justice system and previously [determined] average intellectual skills.

He spontaneously named current counsel and was able to describe[] the appropriate role between an individual charged with the crime and their attorney. He described the judge as the individual who "make sure all proceedings go right." He defined the jury as consisting of 12 individuals who "listen to all evidence and give verdict." Mr. Puttman stated that witnesses were required to "tell their side of the story." He had no difficulty describing available legal strategies.

With respect to more global issues surrounding competency, there is no guarantee that Mr. Puttman will maintain appropriate comportment at trial. However, it is my clinical judgement (sic) that his behavior is under conscious control and not a product of psychotic disorder. Further the defendant appears highly invested in avoiding continued incarceration. Consequently, it is my general opinion that Rickie Puttman will be able to understand the proceedings to come and assist counsel in his own behalf at this time if properly motivated.

SUMMARY AND RECOMMENDATIONS

. . . Mr. Puttman appears highly invested in presenting himself in the least favorable light possible with respect to psychiatric stability. Despite his reports, there have been no objective indices of hallucinatory experience. It is my clinical opinion he should be able to understand the proceedings to come and serve in the role of defendant.

Consequently, I recommend that Mr. Puttman be allowed to proceed with the

disposition of the charges against him.  He should be encouraged, if not required, to abstain from self-injurious acts and to also abstain from the use of recreational chemicals.  At this time, while there is no guarantee that Mr. Puttman will not act out in self-harm or toward others, his behavior appears to be within his control.

*Respondents' Exhibit G to September 20, 2004 Answer* at 5-8 - *Forensic Evaluation Report* at 4-7.

On May 14, 1996, Putman entered guilty pleas to first degree robbery and second degree kidnapping.  A review of the transcript from this proceeding demonstrates that the trial court conducted an extensive plea colloquy with Putman prior to accepting his guilty pleas.  *Respondents' Exhibit H - Guilty Plea Transcript.*[6]  During the colloquy, the court informed Putman of the nature of the charges against him and the potential range of punishment associated with each charge.  Putman acknowledged that he understood the nature of the charges, the limits of punishment and that the court would set punishment within the identified limits.  The court also informed Putman of his right to enter a plea of not guilty and/or not guilty by reason of mental disease or defect and the right to persist in such plea thereby securing a trial on the charges pending against him.  The judge likewise advised Putman of his right to appeal.

During the plea colloquy, Putman admitted that counsel advised him of and he understood all constitutional rights relative to the proceedings against him.  Putman also

---

[6]. The respondents fail to assign a letter designation to this exhibit.  Thus, in the interest of clarity, the court has assigned the sequential letter of the alphabet following the last lettered exhibit attached to the initial answer to identify this exhibit.

7

acknowledged that the judge previously informed him in writing, via the Explanation of Rights and Plea of Guilty Form, of his constitutional rights.  This form further reflects that Putman admitted he understood his constitutional rights and that he understood that he waived those rights by pleading guilty.  *Respondents' Exhibit F* at 30-31 - *Explanation of Rights and Plea of Guilty Form* at 1-2.   Putman likewise acknowledged that he knowingly and voluntarily chose to enter guilty pleas to two of the charged offenses.  *Id*. at 2.  After being advised of and waiving his rights, Putman pled guilty to first degree robbery and second degree kidnapping.

### B.  Substantive Competency - Adjudication by the State Courts

Putman's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act.  *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).  Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-413 (2000), the Supreme Court held that:

> Under the "contrary to" clause a federal court may grant the writ
> if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state
> court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003).  Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law.  *Williams,* [529 U.S. at 409], 120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective

reasonableness" of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).

Moreover, "an *unreasonable* application of federal law is different from an *incorrect*

application of federal law."  *Williams v. Taylor*, 529 U.S. at 410, 120 S.Ct. at 1522

(emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal

habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable."  529 U.S.

at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based

its findings on "an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of

fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1).  However, even when the state court addresses a question of law, this court is not

authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of §

2254(d)."  *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that

such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. §

2254(d) . . ."  538 U.S. at 636, 123 S.Ct. at 1851.

With respect to the substantive competency claim, the record establishes that Putman

is entitled to no relief as the state courts properly adjudicated this claim on the merits.

*Williams v. Taylor*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1523.  Specifically, on appeal from the denial of Putman's third Rule 32 petition, the Alabama Court of Criminal Appeals adjudicated the substantive competency claim adversely to Putman on the merits in a memorandum opinion.[7]  The relevant portion of this opinion reads as follows:

> Puttman filed the present petition on March 12, 2003.  Puttman, relying on *Blankenship v. State*, 770 So.2d 642 (Ala.Crim.App. 1999), claimed that his [robbery and kidnapping] convictions should be vacated and the cases remanded for a competency hearing because, he said, he was incompetent at the time of his May 1996 guilty-plea proceedings and the trial court should have held a competency hearing prior to accepting his guilty pleas.  The State filed a response, contending that Puttman's claim was barred because, it said, (1) his claim was precluded by Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P., as it was not raised at trial and on appeal and (2) his claim was precluded by the limitations period in Rule 32.2(c), Ala.R.Crim.P.  The circuit court summarily denied Puttman's petition.

> On appeal, Puttman contends that his claim regarding his competency at the time of his guilty-plea proceedings cannot be procedurally barred because, he says, this claim involves an allegation that his substantive due process rights were violated.  We agree that to the extent that Puttman's claim raises a substantive due process claim, it is not subject to procedural bars.  *See Nicks v. State*, 783 So.2d 895, 908 (Ala.Crim.App. 1999).  [To the extent Puttman raises a procedural due process claim, this claim is procedurally barred.]

> However, we need not reverse the circuit court's summary denial of Puttman's petition because our review of the record shows that this case can be distinguished from *Blankenship*, 770 So.2d 642.  In *Blankenship*, the initial report of the Department of Mental Health and Mental Retardation stated that Blankenship was incompetent to stand trial; a second report from the Department of Mental Health and Mental Retardation indicated that Blankenship was competent to stand trial; the trial court allowed Blankenship to enter a guilty plea without conducting a hearing on the issue of his competency or finding that he was competent to stand trial; and this Court

---

[7]. In this opinion, the state appellate court noted that documents contained in the record referenced two different spellings for the petitioner's last name - Putman and Puttman. *Respondents' Exhibit C - Memorandum Opinion on Appeal from Denial of Third Rule 32 Petition* at 1 n.1.  The court utilized the latter spelling in its memorandum opinion.

remanded the case to the trial court for that court to conduct a competency hearing on the issue of whether Blankenship was competent at the time he entered his guilty plea.  In our opinion remanding the case, this Court stated:

>"'Trial of a person who is incompetent violates the due process guarantees.  Therefore, <u>when a trial court is faced with facts that create a reasonable and bona fide doubt as to the mental competency of the defendant to stand trial, the trial court must take steps to assure that a reasonable legal determination of competency is reached</u>.  In other words, in such situations, the trial court must inquire into the defendant's competency, generally by conducting a competency hearing.'

"*Ex parte Janezic*, 723 So.2d 725, 728 (Ala. 1997) (citations omitted)....

>"Here, the record is silent as to whether the trial court conducted a competency hearing or made any inquiry into the appellant's competency at the time he entered his plea.  <u>An examination of the record reveals that the Department of Mental Health and Mental Retardation initially found that the appellant was incompetent to stand trial; thus, there was a reasonable doubt as to his competency at the time he entered his plea.</u>"

*Blankenship*, 770 So.2d at 643 (emphasis added).

However, in the present case, our review of the record does not reveal any facts that created a reasonable doubt as to Puttman's mental competency at the time that he entered his guilty pleas.  While it is true that in April 1996, the trial court had ordered that Puttman be evaluated as to his competency to stand trial after he had attempted to commit suicide while incarcerated in the Randolph County Jail, the Department of Mental Health and Mental Retardation's evaluation indicated that Puttman was competent to stand trial.

Puttman points to his May 6, 1996, motion for an independent mental exam as evidence of his incompetency at the time he entered his guilty pleas on May 14, 1996.  In his motion for independent mental exam, Puttman alleged the following: that he had been evaluated at Taylor Hardin Secure Medical Facility where it was determined that he "was competent to stand trial"; that after his evaluation at Taylor Hardin Secure Medical Facility, he was returned to the Randolph County Jail on or about May 1, 1996; that upon  his return to the Randolph County Jail, it was "alleged" that he got under his bed and "'growled'" at the people trying to get him out from under the bed; that when Puttman's trial counsel came to the jail on May 1, 1996, Puttman "was unresponsive to defense counsel's questions" and that Puttman's "head was bobbing and he was shaking"; that when Puttman's trial counsel returned to

the jail on May 2, 1996, he witnessed Puttman "lying on a pallet, shaking and being unresponsive"; and that Puttman's trial counsel was "presently unable to assist [Puttman] in preparation for his case or even intelligently discuss potential plea agreements."   However, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irritable behavior can be equated with mental incompetence to stand trial." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).  In *Nicks*, 783 So.2d at 908-09, this Court stated:

> "'A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent.  In contrast to a procedural competency claim, however, "a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence."   <u>A petitioner who presents "clear and convincing evidence" creating a "real, substantial and legitimate doubt" as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim.</u>'

"*Medina v. Singletary*, 59 F.3d at 1106."

   (Emphasis added).  We find that Puttman is not entitled to any relief on his claim because he did not present facts that created a reasonable doubt as to his mental competency at the time he entered his guilty pleas.

*Respondents' Exhibit C - Memorandum Opinion on Appeal from Denial of Third Rule 32 Petition* at 2-5 (citations to record and footnotes omitted).

   It is clear from the foregoing that the Alabama Court of Criminal Appeals adjudicated adversely to Putman the substantive challenge to his competence to enter guilty pleas for first degree robbery and second degree kidnapping.  This Court must therefore review these claims in accordance with the directives contained in 28 U.S.C. § 2254(d)(1) and (2). *Williams v. Taylor*, *supra*.

   Putman argues that he pled "guilty while he was mentally incompetent" in violation

of his constitutional rights. *Attachment to Petition for Writ of Habeas Corpus - Statement of the Case and Facts* at 2. The state appellate court found no merit to Putman's challenge to the constitutionality of his guilty pleas. Specifically, in affirming the denial of Putman's third Rule 32 petition, the Alabama Court of Criminal Appeals observed that Putman "did not present facts that created a reasonable doubt as to his mental competency at the time he entered his guilty pleas." *Respondents' Exhibit C - Memorandum Opinion on Appeal from Denial of Third Rule 32 Petition* at 5.

The Alabama Court of Criminal Appeals did not decide Putman's mental incompetence claim "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state appellate court apply a rule that contradicts governing federal law. *Williams v. Taylor*, 529 U.S. at 413, 120 S.Ct. at 1523. Consequently, the rejection of this claim by the Alabama Court of Criminal Appeals was not contrary to actual Supreme Court decisions. Moreover, a thorough review of the evidentiary materials submitted in this case establishes that the state appellate court's denial of Putman's claim challenging his competency to plead guilty was objectively reasonable. The decision issued by the Alabama Court of Criminal Appeals likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties. Putman is therefore due no relief from this court on his substantive competency claim.

### C.  Procedural Competency - Application of the Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 amended the habeas

14

corpus statute to include a one-year period of limitation on petitions of state inmates filed

pursuant to 28 U.S.C. § 2254.  This limitation period is codified at 28 U.S.C. § 2244(d)

and provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute clearly directs that the limitation period for filing a 28 U.S.C. § 2254

petition begins to run at the conclusion of direct review or upon expiration of the time for

seeking direct review, whichever is later.  Where a petitioner preserves his right to file a

petition for writ of certiorari in the United States Supreme Court, the statute of limitations

is tolled during the ninety-day period in which such action may be undertaken.  *Coates v.*

*Byrd*, 211 F.3d 1225, 1226 (11th Cir. 2000) ("A judgment does not become 'final by the conclusion of direct review or by the expiration of the time for seeking such review,' *see* 28 U.S.C. § 2244(d)(1)(A), until the Supreme Court has had an opportunity to review the case or the time for seeking review has expired."); *see also* Rule 13.1, *Rules of the United States Supreme Court* (a petition for writ of certiorari may only be filed to review a judgment or order entered by a state court of last resort and must be filed within 90 days of the action undertaken by such state court).  Accordingly, a state court judgment of conviction becomes final under 28 U.S.C. § 2244 when the United States Supreme Court denies certiorari or the time to apply for certiorari expires.  *Id.*

In accordance with the terms of a negotiated plea agreement, Putman entered  guilty pleas to charges of first degree robbery and second degree kidnapping before the Circuit Court of Randolph County, Alabama on May 14, 1996.  The trial court imposed sentence upon Putman on this same date.  Putman did not file a direct appeal of these convictions. Since Putman chose to forego the direct appeal process, he could not petition the United States Supreme Court for review of his convictions.  By operation of law, Putman's robbery and kidnapping convictions became final on June 25, 1996 -- forty-two days after imposition of conviction and sentence as this is the date on which his time to seek direct review of his convictions expired.  *See* Rule 4(b)(1), *Alabama Rules of Appellate Procedure*.  The one-year period of limitation contained in section 2244(d)(1)(A) therefore began to run on this date.

    1.  **Statutory Tolling of the Limitation Period**.  Title 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."  The court therefore finds that the limitation period ran for 77 days after Putman's robbery and kidnapping convictions became final until the filing a Rule 32 petition in the Circuit Court of Randolph County on September 11, 1996.  The trial court entered an order denying this Rule 32 petition on December 12, 1996.  *Respondents' Exhibit F at 35.*  On December 18, 1996, Putman filed a second Rule 32 petition which the trial court summarily dismissed on January 2, 1997.  *Respondents' Exhibit F at 55.*

    Putman appealed these denials and the Alabama Court of Criminal Appeals affirmed the trial court's rulings by memorandum opinion on September 5, 1997.  *Respondents' Exhibit E - Memorandum Opinion on Appeal from Denial of First and Second Rule 32 Petitions*.  Putman did not further appeal and the appellate court therefore issued the certificate of judgment on September 23, 1997.  *Respondents' Exhibit D.*  Final resolution of these post-conviction actions in the state courts occurred upon issuance of the certificate of judgment.  Thus, as of September 23, 1997, Putman had 288 days of the applicable limitation period remaining within which to file a federal habeas petition.  Consequently, the time allowed Putman for filing a petition for habeas corpus relief in this court expired on July 8, 1998.  Although Putman filed a third Rule 32 petition in February of 2003, this post-

conviction petition was not pending during the running of the limitation period as Putman filed the petition after expiration of this time period.  "[E]ven 'properly filed' state-court petitions must be 'pending' [during the one-year period of limitation] in order to toll the limitations period.  A state court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled." *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000); *see also Tinker v. Moore*, 255 F.3d 1331, 1333-1335. n.4 (11th Cir. 2001) ("[A] properly filed petition in state court only tolls the time remaining within the federal limitation period.").  It is therefore clear that the state post-conviction petition filed by Putman in 2003 had no affect on the running of the limitation period applicable to the instant federal habeas petition.  *Webster*, 199 F.3d at 1259.

2. <u>**Equitable Tolling of the Limitation Period**</u>.  Case law directs that the limitation period "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002).  "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States District Court,* 128 F.3d 1283, 1288 (9th Cir.1997).  Such tolling applies only in truly

18

extraordinary circumstances. *Jones v. United States,* 304 F.3d 1035, 1039-40 (11th Cir. 2002); *Drew v. Department of Corrections,* 297 F.3d 1278, 1286 (11th Cir. 2002). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew,* 297 F.3d at 1286.

To the extent the petition can be construed to assert that Putman's mental incompetence/illness justifies invocation of equitable tolling, Putman is entitled to no relief as he has failed to establish a causal connection between his alleged mental incapacity and his ability to file a timely federal habeas petition.[8] *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005); *Bilbrey v. Douglas*, 124 Fed.Appx. 971, 973 (6th Cir.2005) (equitable tolling not applicable because petitioner "failed to establish a causal connection between her mental condition and her ability to file a timely petition"); *Green v. Hinsley*, 116 Fed.Appx. 749, 751 (7th Cir.2004) (equitable tolling did not apply because petitioner failed to submit evidence of how his low IQ would render him incompetent or prevent him from timely filing his petition); *Fisher v. Gibson*, 262 F.3d 1135, 1145 (10th Cir.2001) (petitioner's mere allegations of incompetency at the time of his guilty pleas did not suffice to warrant equitable tolling of the limitations period).   A petitioner must make a threshold showing of incompetence, *see Calderon v. United States District Court for the Central District of*

---

[8]. Putman attaches a January 30, 2002 Mental Health Services Treatment Plan for Outpatient Care prepared by correctional medical personnel as an exhibit to his habeas petition which demonstrates diagnoses of post-traumatic stress disorder (PTSD), substance abuse, personality disorder and mental illness. *Petitioner's Exhibit E*.  This plan recommends outpatient treatment of Putman's mental health issues but does not in any way indicate that Putman ever suffered from mental incompetence or is now mentally incompetent.  *Id*.

19

*California*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), and demonstrate that the alleged incompetence affected his ability to file a timely habeas petition.  *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 618 (3rd Cir. 1998).  Thus, the mere fact that Putman has suffered and/or now suffers from mental impairments, without more, is insufficient to justify equitable tolling.  *Lawrence*, 421 F.3d at 1227; *Lake v. Arnold*, 232 F.3d 360, 371 (3rd Cir. 2000) (mental incompetence, standing alone, not sufficient reason to toll limitation period).

Putman's claim of mental incompetence at the time of his guilty pleas is refuted by the record in this case and he has failed to present any evidence which refutes that contained in the record.  Although Putman submits evidence demonstrating that medical personnel at the Bullock County Correctional Facility diagnosed him with various mental health issues and mental illness in January of 2002, he has presented nothing to this court which indicates that these impairments rendered him incompetent or incapable of preparing a habeas petition at any time during the running of the limitation period.  Moreover, the record in this case establishes that Putman filed three detailed state post-conviction petitions and this federal habeas petition while proceeding pro se.  While attacking his convictions on several grounds in his first two state post-conviction petitions, Putman did not present a challenge to his competency until the third such petition.  In light of the foregoing, the court concludes that Putman has failed to demonstrate that his mental health status in any way adversely affected his ability to file a timely federal habeas petition.  Consequently, equitable tolling is not

warranted and Putman's petition with respect to his claim challenging the trial court's failure to conduct a competency hearing is properly subjected to the one-year period of limitation mandated by federal law.[9]

   **3.   Expiration of the Limitation Period** .  Putman filed the instant federal habeas petition on August 9, 2004.  Under the facts and circumstances of this case, the one-year period of limitation contained in 28 U.S.C.  § 2244(d)(1) began to run on June 25, 1996 and expired on July 8, 1998.  The limitation period therefore lapsed several years prior to Putman filing this federal action.  Putman has failed to show cause why his procedural competency

---

   [9].  On appeal from the denial of his third Rule 32 petition, the Alabama Court of Criminal Appeals denied Putman relief on his claim that the trial court erred in failing to conduct a competency hearing because he failed to demonstrate "reasonable doubt as to his mental competency at the time he entered his guilty pleas." *Respondents' Exhibit C - Memorandum Opinion on Appeal from Denial of Third Rule 32 Petition* at 5.  Thus, even if this claim warranted federal review, such review would likewise be severely limited by the directives of 28 U.S.C. § 2254(d)(1) and (2).  As previously determined, these sections authorize habeas relief only when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)."  *Price*, 538 U.S. at 640, 123 S.Ct. at 1853.  Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409],120 S.Ct. at 1521."  *Hawkins*, 318 F.3d at 1310; *Parker*, 244 F.3d at 835, citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision.  *Brown*, 272 F.3d at 1313.  This court must also determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and a habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Additionally, with respect to a question of law, a district court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)[,]" *Price*, 538 U.S. at 639, 123 S.Ct. at 1852, as such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.

   In light of the foregoing, even assuming arguendo that Putman's procedural competency claim warrants federal review, such claim would not entitle Putman to  relief as the state courts properly adjudicated the claim on the merits.  Specifically, the decision of the appellate court was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

claim should not be dismissed as untimely filed.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The  petition for habeas corpus relief filed by Rickie Lowell Putman be denied.

2.  This case be dismissed with prejudice.


It is further

ORDERED that on or before June 1, 2006 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of May, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE